The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. Plaintiff's alleged date of injury is 22 August 1996.
2. On that date, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
3. On that date, an employer/employee relationship existed between the parties.
4. Key Risk Management Services was the servicing agent for the self-insured employer.
5. All parties are properly before the Commission and this is the Court of proper jurisdiction for this action.
6. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
In addition, the parties stipulated into evidence the following:
1. Form 22 dated 29 September 1997.
2. Plaintiff's answers to discovery requests.
3. Medical records and reports from Dr. Black.
4. Medical records and reports from Kaiser Permanente.
5. Form 19 and accident report for a prior injury.
6. Deposition of Dr. Black.
A Pre-Trial Agreement dated 22 July 1998 was submitted by the parties at the hearing and is incorporated by reference.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was thirty-seven years of age at the time of the hearing and a high school graduate, originally began working for defendant in August 1991. His job involved operating heavy equipment and performing masonry and form work in order to install storm drains, curbs, gutters and sidewalks.
2. On 22 August 1996 plaintiff was on a work crew which had been assigned the task of installing sidewalk and handicapped ramps at the intersection of Tarbart Drive and Cary Parkway. He worked for several hours that morning and while lifting a steel form used to shape curbs, plaintiff felt a pop in his back and experienced very intense pain. Plaintiff advised his coworkers that he had hurt his back, and he left to go to Kaiser Permanente to see a doctor.
3. Plaintiff also told his supervisor, Roy Correll, who said he did not remember the conversation with the plaintiff. However, Mr. Correll did state that the time sheets kept by the town of Cary indicate that plaintiff did leave work on 22 August 1996 at 11:30. After waiting for a period of time, plaintiff was advised that no doctor at Kaiser could see him that day, so he was given prescriptions for pain, anti-inflammatory and muscle relaxant medications.
4. The note from Kaiser of 22 August 1996 indicated that plaintiff had pulled a muscle in his lower back one week earlier and that he wanted a work-in appointment that afternoon. The plaintiff never said anything about being injured a week earlier and also said it was not the first time Kaiser had made an error in his records. In light of the fact that Kaiser had admitted to an error and corrected it on another occasion and that no witness testimony was offered regarding the 22 August note, the Full Commission does not place a great deal of weight on this note.
5. Plaintiff next contacted Kaiser on 4 September 1996 stating that he had had low back pain since August 22 and wanted to see a doctor. Consequently, an appointment was arranged and he was seen on 5 September 1996. The Kaiser notes from that appointment said that he had been having back pain four to five years, worse lately. The plaintiff said he had strained his back on prior occasions due to the heavy work he had done, but that he had never needed extended medical care or been unable to perform his job duties.
6. Plaintiff was subsequently referred to Dr. Moriarty, an orthopedic surgeon with Kaiser, who saw him on several occasions. X-rays and MRI showed the presence of a disc injury. Dr. Moriarty referred plaintiff to Dr. Black, an independent orthopedic surgeon.
7. Dr. Black evaluated plaintiff on 2 December 1996. Plaintiff advised the doctor that he had intermittent back pain over many years; that he had recently been experiencing pain for several months and that it had worsened in the previous six weeks. There is no evidence to suggest that plaintiff sustained any trauma since the 22 August 1996 incident. Dr. Black reviewed the MRI results, which revealed degenerative changes at L5-S1 with some evidence of spondylolisthesis, but no nerve root compression. He diagnosed plaintiff's condition as degenerative disc disease at L5-S1 and treated him with oral steroid medication, physical therapy and epidural steroid injections. Plaintiff returned on 24 February 1997 having not improved, so Dr. Black ordered a discogram. The test was performed in March, but the radiologist was unsuccessful in several attempts at injecting the L5-S1 disc, so the discogram could not be completed.
8. When Dr. Black then outlined plaintiff's treatment options, plaintiff indicated that he wanted surgery. On 14 May 1997, Dr. Black performed surgery to decompress and fuse the L5-S1 interspace. Following the operation, plaintiff slowly improved and by 18 August 1997 was able to return to work reading meters, which required walking several miles as well as getting in and out of his vehicle. Plaintiff was still having stiffness in the back as well as an intermittent tingling sensation in the posterior aspect of the leg. Plaintiff also worked in a light duty capacity driving a debris removal truck during the aftermath of hurricane Fran, while continuing with conservative treatment with little or no relief.
9. Dr. Black continued to follow plaintiff's recovery. At his deposition, Dr. Black testified that any preexisting condition in plaintiff's low back was aggravated to a significant degree by the on-the-job injury of 22 August 1996. Dr. Black also testified that he was not aware of any other injury to plaintiff's back occurring before or after the 22 August 1996 incident.
10. Dr. Black gave plaintiff a note allowing him to return to sedentary work on 1 August 1997, but defendant told plaintiff that they had no light-duty work available at that time. The plaintiff was then terminated by the defendant.
11. When the application for short-term disability was completed, plaintiff was not questioned about the origin of his back problems to determine if they were the result of an on-the-job injury. Phyllis Ovens, the personnel technician, admitted that she never asked the plaintiff the origin of his injury nor did she give him a questionnaire to ascertain information for completing the disability application.
12. Mr. Steven Jacobi initially testified for the defendant that he had worked with the plaintiff on the 22nd, but after having his memory refreshed with his own diary, he admitted that it was the 28th of August he had worked with the plaintiff and not the 22nd. Therefore, the Full Commission places no weight on the testimony of Mr. Jacobi.
13. Carl Godwin, the plaintiff's previous supervisor, had no knowledge of the plaintiff's injury nor the job site where it occurred. Dale Johnson, employee benefits manager for the town of Cary, admitted he did not deal directly with the plaintiff because Ms. Ovens handled that application. The Full Commission places no weight on the testimony of Mr. Godwin and Mr. Johnson.
14. The two employees, Phillip Vurro and Ricardo Caceres, who were working with plaintiff on 22 August testified that the plaintiff hurt his back on that job and he told them that he was going to go to the doctor, which corroborates the testimony of the plaintiff. The Full Commission finds this as a fact.
15. Dr. Black testified that plaintiff was temporarily totally disabled during the time he was being treated and that he would experience good days and bad days. Dr. Black also stated that there could be future symptoms and there was a possibility of further injury at the levels above the fusion because of increased stress, but that it was unpredictable. As of the 22 January 1998 deposition of Dr. Black, no permanent partial disability rating had been assigned to the plaintiff.
16. Plaintiff was able to return to work with the town of Cary in a different job on 19 August 1997. At the time of the Hearing before the Full Commission, the plaintiff was still so employed.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. The plaintiff sustained a compensable, on-the-job injury to his back on 22 August 1996. N.C. Gen. Stat. § 97-(2)(6).
2. The plaintiff was temporarily totally disabled from 28 October 1996 to 19 August 1997 due to the 22 August 1996 on-the-job injury. Therefore, plaintiff is entitled to temporary total disability benefits for that period of disability. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of all past and future medical expenses incurred or to be incurred as the result of his compensable injury by accident, which are reasonably necessary to effect a cure or give relief. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay compensation to plaintiff at the appropriate compensation rate for the period the plaintiff was temporarily totally disabled, which was 28 October 1996 to 19 August 1997. This compensation has already accrued and shall be paid in a lump sum without commutation.
2. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
3. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury by accident, which are reasonably necessary to effect a cure or give relief.
This 7th day of October 1999.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER